OPINION OF THE COURT
David Demarest, J.
This CPLR article 78 special proceeding seeks to annul determinations of the Adirondack Park Agency (APA), dated June 25, 2008. Respondent interposed its answer with a counterclaim and seeks dismissal of the petition. In its simplest form, this lawsuit arises out of the parties’ initial dispute as to whether an assembly of rocks measuring 100 feet in width and 12 feet in height at the center, tapering to several feet at either end, installed on the Harringtons’ shoreline of Rainbow Lake, is a “retaining wall” and, thus, within respondent’s jurisdiction, or a “rock garden” which falls within the landscaping exemption under Executive Law § 802 (28). The dispute placed before the APA enforcement committee focused not on whether the rock assembly functioned as a “retaining wall,” but rather whether the assembly of rocks constituted a prohibited structure located on “low intensity use” lands within 35 feet of the mean highwater mark. Petitioners argue the rock garden constitutes exempt landscaping activities over which respondent has no jurisdiction by virtue of Executive Law article 27.
In pertinent part, Executive Law § 806 (1) prohibits new land use or development involving any shoreline within the Adiron *552 dack Park which does not comply with statutory restrictions, such as a minimum 75-feet setback requirement (from mean highwater mark) for accessory structures (excluding docks and boathouses) exceeding 100 square feet. Executive Law § 802 (28) defines “land use or development” or “use” as “construction or other activity which materially changes the use or appearance of land or a structure” but exempts from its definition activities of “landscaping or grading which is not intended to be used in connection with another land use, or ordinary repairs or maintenance or interior alterations to existing structures or uses.” The term “structure” is defined as “any object constructed, installed or placed on land to facilitate land use and development .... such as buildings, sheds, single family dwellings, mobile homes, signs, tanks, fences and poles and any fixtures, additions and alterations thereto.” (Executive Law § 802 [62].) Violations of article 27 of the Executive Law and any rules or regulations promulgated by the APA or the terms or conditions of any APA order or permit issued pursuant to article 27 allow imposition of civil penalties in the amount of $500 per day and/or enforcement proceedings. An APA enforcement committee’s determination of enforcement proceedings pursuant to 9 NYCRR subpart 581-2 constitutes a final determination.
The parties engaged in settlement negotiations from August 2004 to March 2007 to no avail. In May 2007 a notice of apparent violation was sent to petitioners’ counsel who responded in writing on June 28, 2007. Thereafter, on June 25, 2008, the parties’ counsel appeared before the APA enforcement committee, resulting in a June 25, 2008 determination adverse to petitioners’ interests, which required removal or burial of the rock wall structure by December 31, 2008, or proposal of an alternative remediation plan within 60 days together with payment of a $15,000 civil penalty payable to New York State by July 31, 2008. Petitioners neither removed nor buried the offending condition nor paid the civil penalty, but, instead, commenced this special proceeding on August 20, 2008 objecting to the determination as being arbitrary, capricious, in excess of prevailing law, and inconsistent with the plain meaning of the statute. Likewise, petitioners argue the APA enforcement committee’s applications and interpretations of the statutory provisions are unreasonable, contrary to the express provisions of the statute and irrational. Additionally, petitioners seek an order: directing APA enforcement attorney Paul VanCott be barred from any *553 participation or involvement — retroactively and prospectively— with petitioners’ property due to personal bias and direct or indirect conflict of interest; and annulling and vacating the $15,000 civil penalty as it was imposed without evidence warranting the penalty and was so disproportionate to the alleged offense as to shock one’s sense of fairness.
It is respondent’s position that the slope of the land which prompted petitioners’ creation of the so-called rock garden was the direct result of petitioners’ building site work — namely, grading a level terrace — in preparation for their single-family dwelling construction activities. For this reason, it is respondent’s position that the landscaping exemption does not apply. Characterizing the rock wall construction as a land use and development activity, as a structure in excess of 100 square feet, it is subject to the shoreline setback requirements. Respondent moves for dismissal of the special proceeding and interposes its objections in point of law, verified answer, verified counterclaim (compelling payment of $15,000 civil penalty) and return. Specifically, respondent seeks dismissal of petitioners’ fourth cause of action (removal of attorney VanCott for bias and/or conflict of interest) for failure to state a cause of action, citing the absence of proof of bias adverse to petitioners or improper influence upon the Agency, and that the enforcement order was issued by the Agency.
Thereafter, petitioners submitted a reply to counterclaim with defense and objection to respondent’s incomplete return since the verbatim transcripts of the parties’ counsel before the APA enforcement committee were not submitted. In reply, respondent argues it did not create such a transcript insofar as counsel’s presentations to the APA enforcement committee consist of legal argument, but submits a DVD of the “webcast” recording (in excess of five hours). The pertinent portion of the DVD (less than one hour) was viewed and considered in rendering this decision.
Petitioners characterize the man-made rock assembly as strictly landscaping: a rock garden, not a retaining wall. They do, however, note that their landscaping efforts resulted from their building site grading activities which created a sloped area on the lake side portion of their property, resulting from their efforts to create a “flat terrace [of earth] on top of which the house was constructed.” It is averred that the structure is not a retaining wall since it does not support a mass of soil, but rather was placed upon a portion of a graded slope with a rise over run *554 ratio of one vertical on one horizontal such that the graded slope does not exceed its angle of repose. To this end, petitioners note that the one-on-one graded slope which has been seeded and mulched (west of the rock garden), does not show any indication of slope failure over the past three years. William J. Curran, petitioners’ expert, former APA deputy director of regulatory programs with Associate’s and Bachelor’s degrees in landscaping, was retained in 2004 to render landscape and development advice on this project. Curran opines the rock garden “is not now a structure or subject to APA jurisdiction because as a rock garden is landscaping it is exempt.” (Curran affidavit, sworn to May 21, 2008, ¶ 4.)
Respondent’s employee, Shaun Lalonde, a professional engineer, opined that
“[t]he linear, constructed, dry laid stones with vertical components depicted in the photographs attached as exhibits to the affidavits of Emily Tyner and John Burth [APA Enforcement Officers] support, or hold in position, the mass of soil comprising the terrace, thereby resulting in a structure which meets the Agency definition of retaining wall. The particular type of structure utilized at the site is a toe-wall. The toe wall placed at the foot of the terrace helps stabilize the slope against mass movement and protects the toe against scour and undermining. . . . dry laid stones were utilized to support vertical components and the final steep slope of 1:1. As a result, in my professional opinion, the dry laid stone retaining wall is a structure constructed to facilitate new land use and development.” (Lalonde affidavit, Feb. 27, 2008, ¶¶ 4, 5.)
He also went on to opine that, considering the factors outlined in 9 NYCRR 576.1 (c) (l)-(6), had petitioners sought a variance, Agency staff would not have recommended its approval. {Id. ¶ 6.)
Petitioners argue that Lalonde’s opinion is speculation since his affidavit fails to present evidence “developed by testing or other method,” inclusive of interviews with the construction entity which assembled the rock garden, that the rock garden supports a mass of soil so as to constitute a “retaining wall” as defined by APA regulations at 9 NYCRR 570.3 (ad). To this end, petitioners aver that had the entire slope been seeded and mulched, the entire landscaping treatment would neither be a structure nor subject to APA shoreline requirements. For this *555 reason, it is argued, the rock garden — as a landscaping treatment — is exempt under section 802 (28) and does not constitute a “structure constructed to facilitate new land use and development” (Lalonde affidavit, Feb. 27, 2008, ¶¶ 4, 5) under section 802 (62) and (28). Since the burden was on the APA to support its claims by competent evidence, petitioners argue the underlying administrative proceeding should have been dismissed.
Curran opines the composition of elements constitutes a rock garden which is a landscaping treatment, not a retaining wall or other land use and development. On this point, he takes issue with the insufficiency of the definition for “retaining wall” found at APA Regulations (9 NYCRR) § 570.3 (ad) and the absence, altogether, of the definition for “landscaping.” He states that the closest point of the toe of the slope, measured horizontally to the shore of the lake, is approximately 37 feet and that the slope is one on one. Curran also challenged Lalonde’s affidavit, citing the absence of testing or interviews with construction personnel. He also notes that Lalonde’s opinion was expressed on the basis of photographs, whereas Curran’s opinion is based upon personal inspection and testing. Notably, Curran disputes the existence of a toe-wall since the base course boulders were not embedded in the native soil (to resist soil movement), but rather were set in a layer (approximately one inch) of bark mulch, the difference not discernable from Lalonde’s review of photographs.
Petitioners also tendered the affidavit of his contractor in the administrative proceeding wherein it is explained that the structure is not a retaining wall, but a rock garden. On this point, it is alleged that a retaining wall is usually constructed in a trapezoidal form to resist soil movement; the bottom layer of boulders for the rock garden was not embedded into the soil; the boulders are of uniform size; voids in the structure permit planting of vegetation; and, any boulder “recessed” into ground cover was done for visual aesthetics. Petitioners’ counsel argues the vague definition of “retaining wall” (9 NYCRR 570.3 [ad]) and absence of a definition for “landscaping” do not provide landowners with notice or knowledge of what structure constitutes a “retaining wall” as opposed to a “rock garden,” so as to deprive citizens of due process of law.
Respondent alleges the rock assembly is a “structure” pursuant to Executive Law § 802 (62) and constitutes “land use and development” pursuant to section 802 (28). While it is averred the rock assembly functions as a retaining wall, this character *556 ization was not determinative of the issue presented. Definitions for terms used in section 802 of the Adirondack Park Agency Act (Executive Law art 27) are found at 9 NYCRR 570.3. Specifically, section 570.3 (ad) states “[retaining wall means a permanent structure of cribbing, wood, masonry, stone, concrete or other material that supports a mass of soil.” Notwithstanding whether it functions as a retaining wall, it is APA’s position the slope was created when the building site was created to facilitate land use and development and, thus, the rock garden constitutes an accessory structure. Respondent further argues that retaining walls are considered a specific type of accessory structure since they are usually incidental, subordinate and associated with the land’s principal use. It supported this view at the administrative hearing with the affidavit of Shaun Lalonde.
Lalonde’s affidavits state he has reviewed photographic evidence and the APA’s geographic information system “slope map” to determine: petitioners’ construction site method was “cut and fill,” one-on-one slopes of the constructed terrace, slopes south of the residence exceeding one-on-one, and stabilization of the steep slope associated with the constructed terrace by vegetation and rock wall. While he opines the rock assembly is a “retaining wall” and “structure,” he also states that the lack of “continuous joint planes in the vertical or lateral directions” indicates this is a rock wall which supports and stabilizes the mass of soil in the terrace. He disputes its characterization as “landscaping” since it was used in connection with another land use, i.e., construction of the residence and garage.
The APA’s enforcement committee’s determination characterized the composition of assembled rocks: a “rock wall,” finding it constituted both new “land use or development” and a “structure” exceeding 100 square feet, subjecting it to the shoreline setback requirements of Executive Law § 806. Notably, the committee neither referenced the rock wall as a “retaining wall,” nor engaged in analysis of any witness’ testimony so as to determine whether it structurally functioned to “support a mass of soil.” Instead, the committee addressed its determination by focusing on the new land use or development verbiage of Executive Law § 806, holding that since the structure (as defined by Executive Law § 802 [62]) exceeded 100 square feet in size and was within 75 feet of the mean highwater mark of the lake within the Adirondack Park on low intensity use lands, a variance was required.
*557 By statutory definition, a “structure” need not serve a structural purpose inherent to the land or its use. For example, the statute defines signs, fences and poles as “structures” without any regard for the object’s structural purpose or function. To be sure, had a chicken wire fence been installed in place of the rock assembly, it would have constituted a structure and required a variance despite the fact it could not and did not support a mass of soil. Upon the evidence presented, inclusive of petitioners’ prior construction building site work, respondent’s determination the rock wall did not constitute limited, exempt landscaping or grading activities was not arbitrary, capricious, contrary to the express provisions of the statute or irrational.
Executive Law § 813 permits the imposition of a civil penalty not exceeding $500 for each day (or part thereof) the violation continues. While the $15,000 penalty is “substantial” considering the infraction was one, seemingly, of an aesthetic nature, it cannot be said to be so disproportionate to the offense as to shock one’s sense of fairness. The parties engaged in lengthy settlement discussions over almost a three-year time period before communications broke down, which included discussions of burying a significant portion of the rocks. A significant monetary fine acts as a deterrent to others who may, otherwise, be tempted to engage in similar activities without a variance. Conversely, a small monetary fine may not serve as a deterrent, but instead encourage landowners to engage in a cost/benefit analysis, consciously choosing to risk the possible imposition of a fine in lieu of applying for a new land use and development variance. The penalty imposed will not be disturbed.
Lastly, attorney VanCott’s involvement in this enforcement proceeding did not constitute a conflict of interest arising from any personal bias. Specifically, there is no proof or allegation that VanCott’s participation in the administrative proceeding resulted in a decision which was premised upon such bias. A decision which is unfavorable to petitioners may not, alone, substantiate claims of prejudice or bias. Petitioners allege VanCott’s prejudice is demonstrated by his biased interpretation and application of regulatory provisions. As an employee of the Adirondack Park Agency, serving as its enforcement attorney, interpretation and application of regulations as well as appearing before that agency’s enforcement committee to argue notices of apparent violation(s) on behalf of the New York State *558 Adirondack Park Agency constitute his job duties. Absent specific factual allegations or proof of bias which served to affect the enforcement committee’s determination in this matter, the fact that family members own nearby lake property is insufficient to demonstrate personal bias. Petitioners’ citation to cases in which courts transferred venue of lawsuits to avoid the slightest suspicion of bias or partiality for a litigant do not apply insofar as VanCott, himself, is not the litigant, but rather represents the litigant, the New York State Adirondack Park Agency. Without more, general suspicions of VanCott’s personal bias will not affect the outcome of this case.
The petition is properly dismissed, and respondent’s counterclaim is granted.